# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANAE SCHMITZER,<br><br>  Plaintiff,<br><br>  v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security[1],<br><br>  Defendant. | Case No.: 1:22-cv-1038 JLT BAM<br><br>ORDER DECLINING TO ADOPT THE FINDINGS AND RECOMMENDATIONS, GRANTING PLAINTIFF'S APPEAL, DENYING THE COMMISSIONER'S REQUEST TO AFFIRM, AND REMANDING THE ACTION FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>(Docs. 17, 19, 20)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY |

Danae Schmitzer seeks judicial review of a final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. (Doc. 1.) Plaintiff asserts the administrative law judge erred in addressing her impairments at step two, evaluating medical opinions in the record, and determining her residual functional capacity. (*See generally* Doc. 17.) For the reasons set forth below, Plaintiff's appeal is granted, the Commissioner's request to affirm is denied, and the matter is remanded for further administrative proceedings.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

**I.      Decision of the ALJ**

The ALJ evaluated Plaintiff's application using the five-step sequential evaluation in 20 C.F.R. § 404.1520(g).  (Doc. 14-3 at 19-32.)  First, the ALJ determined Plaintiff did not engage in substantial gainful activity after her alleged onset date of May 23, 2017.  (*Id.* at 27.)  Second, the ALJ found Plaintiff's severe impairments included: "adjustment disorder, anxiety disorder, chronic fatigue, chronic inflammatory response syndrome (CIRS), and a cardiac impairment." (*Id.*)  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing.  (*Id.* at 20-22.)  Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours and sit for about six hours in an eight- hour workday with normal breaks; never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; have occasional exposure to extreme temperatures of hot and cold; occasional exposure to wetness or humidity; occasional exposure to excessive noise and excessive vibration; occasional exposure to environmental irritants such as fumes, odors, dust, and gases; no exposure to poorly ventilated areas; no exposure to chemicals; no exposure to unprotected heights and no use of moving hazardous machinery; the claimant is able to understand and remember instructions that can be learned after a brief demonstration or up to thirty days of on-the-job training; can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work; superficial face-to-face interactions with the public, but no limits on phone interaction; and can adapt to frequent changes in the workplace.

(*Id.* at 23.)  At step four, the ALJ found Plaintiff was unable to perform her past relevant work with this RFC.  (*Id.* at 30.)  However, the ALJ found at step five that Plaintiff could perform work existing in significant numbers in the national economy.  (*Id.* at 31.)  Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 31-32.)

Plaintiff contends the ALJ erred at step two by not finding her "established impairment of mast cell activation syndrome to be severe."  (Doc. 17 at 15, emphasis omitted; *see id.* at 15-18.)  In addition, Plaintiff argues that "the ALJ had no reasonable basis for the limitations" in the residual functional capacity, and "logical errors" in the above RFC "compel remand."  (*Id.* at 18-19.)  Finally, Plaintiff asserts the ALJ did not properly reject the medical opinions of her treating physicians, Drs. Pietruszka and Jim.  (*Id.* at 20-23.)

///

2

## II. Findings and Recommendations

The magistrate judge acknowledged the ALJ did not address Plaintiff's diagnosis of mast cell activation syndrome. (Doc. 20 at 10.) The magistrate judge noted that "Plaintiff contends the main symptom of MCAS is fatigue, and … fatigue was commonly reported to Plaintiff's various physicians both before and after the diagnosis." (*Id.*) The magistrate judge determined that "even though the ALJ does not reference MCAS at step two, the ALJ assesses and incorporates the resulting fatigue limitation in determining the RFC." (*Id.*, citing AR 23-24 [Doc. 14-3 at 24-25].) The magistrate judge opined "the resulting RFC was the same regardless of the ALJ labeling MCAS 'severe.'" (*Id.* at 11.) Thus, the magistrate judge found "the ALJ did not err in her step two analysis." (*Id.*) To the extent the failure to address MCAS was error, the magistrate judge found "any error is harmless" because the ALJ "considered and accounted for fatigue at step four in assessing medical opinions and formulating the RFC." (*Id.*)

The magistrate judge rejected Plaintiff's contention that the ALJ disagreed with all medical opinions and "was left with an evidentiary deficit." (Doc. 20 at 12, citing Doc. 17 at 19.) The magistrate judge determined that Plaintiff "misstates the ALJ's actions in assessing the medical opinions and Plaintiff's RFC." (*Id.*) The magistrate judge found the ALJ "assessed each of [the] opinions based upon their consistency with the overall record and their supportability from the examiners' own findings and notes, and only fully discounted the opinions of Scott T. Anderson and Gary Hatcher as not persuasive." (*Id.*, citing AR 24-29 [Doc. 14-3 at 25-30].) The magistrate judge opined: "Rather than improperly substituting her own opinion, the ALJ considered the opinions of the state agency consultants, other physicians, Plaintiff's allegations regarding her impairments, and Plaintiff's treatment records." (*Id.* at 12-13.) Therefore, the magistrate judge found "the AL did not err in her assessment of the RFC." (*Id.* at 13.)

Finally, the magistrate judge found the ALJ did not err addressing the medical opinions of Drs. Pietruszka and Jim. (Doc. 20 at 13-27.) The magistrate judge noted that the ALJ referenced "voluminous treatment notes" from Dr. Pietruskza, which the magistrate judge found "invokes the supportability factor." (*Id.* at 19.) Similarly, the magistrate judge determined that "[t]he ALJ's citation of the treatment notes suggests that there was some degree of supportability of Dr. Jim's

opinions." (*Id.* at 26.) The magistrate judge found the ALJ addressed the consistency of the opinions of Drs. Pietruskza and Jim by comparing the limitations identified with other medical evidence and Plaintiff's activities. (*Id.* at 19-20, 25-27.) The magistrate judge opined:

> While the ALJ did not expressly discuss fatigue in explaining why she discounted Dr. Pietruszka's opinion, the ALJ addressed findings from the medical record that suggest the fatigue was less than disabling, including an attention span within normal limits; working memory, recall memory, and executive function within normal limits; a linear thought process; normal musculoskeletal strength; and no evidence of gait abnormality.

(*Id.* at 20.) The magistrate judge determined that "the ALJ did not rule out all limitations imposed by fatigue but instead explained how she incorporated some degree of fatigue limitations into [the] RFC." (*Id.* at 27.) Thus, the magistrate judge found the ALJ did not err addressing Plaintiff's fatigue and the opinions of Drs. Pietruskza and Jim. (*Id.* at 21, 27.)

The magistrate judge concluded, "the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards." (Doc. 20 at 27.) Therefore, the magistrate judge recommended that "Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied." (*Id.*)

### III. **Objections**

Plaintiff filed timely objections to the Findings and Recommendations, asserting the magistrate judge erred addressing each of the three issues raised in her opening brief. (Doc. 21.) First, Plaintiff contends that while the magistrate judge was "correct that the ALJ considered the impairment of chronic fatigue [], the magistrate is merely guessing that the ALJ accounted for the fatigue of the combined impairments." (*Id.* at 2, emphasis omitted.) According to Plaintiff, "it is one thing to be limited by chronic fatigue syndrome, but that greater fatigue may result when chronic fatigue is combined with MCAS." (*Id.*, emphasis omitted.) She contends that despite the finding of the magistrate judge, "there is no evidence offered that the RFC should be exactly the same whether or not MCAS was considered singly or in combination with chronic fatigue syndrome." (*Id.* at 3.) Plaintiff argues the step two error was not harmless. (*Id.* at 5.)

Plaintiff argues the Court should reject "finding that the ALJ committed no error in assessing [her] RFC." (Doc. 21 at 5, emphasis omitted.) She contends the magistrate judge did

4

1  not address whether "the ALJ logically connect[ed] the medical findings to the limitations

2  assessed." (*Id.* at 6.) Plaintiff contends: "[I]t is logical to conclude that an individual with fatigue

3  would not be able to stand for prolonged periods. Yet, the ALJ failed to discuss how the medical

4  evidence supported an ability to stand and walk at least six hours per day." (*Id.*) Plaintiff notes a

5  treating physician opined she "would need to lay down or take excessive breaks due to fatigue,"

6  and "[t]he ALJ did not adopt this finding." (*Id.*) She argues, "The error is that the ALJ failed to

7  state why this finding was not adopted, despite evidence supporting [it]." (*Id.*)

8  Plaintiff requests the Court reject the finding that "the ALJ committed no error in

9  analyzing the medical opinion evidence." (Doc. 21 at 7, emphasis omitted.) Plaintiff asserts,

10 "Saying that one has considered supportability does not necessarily mean one has considered

11 supportability." (*Id.* at 9.) She contends the ALJ "merely vaguely referenced 'voluminous

12 records'" when addressing Dr. Pietruszka's opinion and failed to explain how Plaintiff's reported

13 activities were "in any way inconsistent with the presence of good and bad days and the need to

14 pay down for up to two hours, due to fatigue." (*Id.* at 9-10.) Plaintiff contends the ALJ also erred

15 in addressing the opinion of Dr. Jim, and the magistrate judge "interpret[ed] medical evidence on

16 [her] own" related to Plaintiff's fatigue. (*Id.* at 10.) Plaintiff notes the ALJ has a "burden … [to]

17 cite evidence to support her conclusion," and concludes the ALJ failed to do so here. (*Id.* at 11.)

18 The Commissioner filed a Response to Plaintiff's Objections, requesting the Court adopt

19 the Findings and Recommendations and affirm the administrative decision. (Doc. 23.) The

20 Commissioner maintains the ALJ appropriately evaluated the evidence— including evidence

21 related Plaintiff's fatigue and the medical opinions—and substantial evidence supports the RFC.

22 (*Id.* at 2-5.)

23 **IV.    Discussion and Analysis**

24 A district judge may "accept, reject or modify, in whole or in part, the findings and

25 recommendations..." 28 U.S.C. § 636(b)(1). If objections are filed, "the court shall make a de

26 novo determination of those portions of the report or specified proposed finding or

27 recommendations to which objection is made." *Id.* A de novo review requires the court to

28 "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d

5

930, 932 (9th Cir. 2009).

### A. Step two findings

The inquiry at step two is a de minimus screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153.

Plaintiff notes that Dr. Jim diagnosed her with mast cell activation syndrome (MCAS) in February 2019. (Doc. 17 at 16.) She argues the ALJ erred by not discussing this impairment or finding it is severe at step two. (*Id.* at 15-18.) Plaintiff asserts:

> Clinical studies conducted regarding this rare disease confirm that fatigue is a "common phenomenon" amongst sufferers. Further, studies reveal that once the disease involves brain cells, it "induces subconscious and irresistible sickness behavior. In chronic inflammatory diseases, these processes are continuously active and sickness behavior (and fatigue) becomes chronic." Omdal R, Skoie IM, Grimstad T. Fatigue is common and severe in patients with mastocytosis. Int J Immunopathol Pharmacol. 2018 Jan-Dec; 32:2058738418803252. doi: 10.1177/2058738418803252. PMID: 30350746; PMCID: PMC6201179.

(*Id.* at 16-17.) In addition, she observes that "fatigue was commonly reported to Plaintiff's various physicians both before and after the diagnosis." (*Id.* at 17, citations omitted.)

Plaintiff has the burden to demonstrate that any failure to identify an impairment as severe was a harmful error. *See Howland v. Saul*, 804 F. Appx 467, 469 (9th Cir. 2020) (explaining the claimant bore "the burden of demonstrating harmful error," and the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). A medical diagnosis alone does not demonstrate how that condition impacts Plaintiff's ability to engage in basic work activities. Put another way, a medical diagnosis does not a severe impairment make. As Plaintiff herself acknowledges, she complained of fatigue long before the diagnosis of MCAS and was diagnosed with chronic fatigue syndrome in June 2017. (Doc. 17 at 5, 167.) Although Plaintiff cites clinical studies regarding MCAS, she does not also identify evidence in the record—such as an opinion from a physician—that *Plaintiff's* MCAS is the cause of "subconscious and irresistible sickness behavior," or causes additional fatigue beyond her chronic

6

inflammatory response syndrome (CIRS).  Indeed, at the administrative hearing, Plaintiff attributed her fatigue to CIRS, not MCAS.  (Doc. 14-3 at 79.)  Because the ALJ found "chronic fatigue" was a severe impairment and proceeded beyond step two—including addressing whether Plaintiff's level of fatigue satisfied a Listing—the Court is unable to find Plaintiff shows harmful error.  *See Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005).

### B. Evaluation of medical opinions[2]

The regulations direct ALJs to determine how persuasive a medical opinion is according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors showing the medical source's "familiarity with … other evidence in the record or an understanding of [the] disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c)(1)-(5).  An ALJ is required to discuss supportability and consistency, which are the most important factors "when evaluating the persuasiveness of medical opinions." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)); *see also* 20 C.F.R. § 416.920c(b)(2) ("we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the [remaining] factors in paragraphs (c)(3) through (c)(5) of this section…").

The supportability inquiry is an assessment of "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence."  *Woods*, 32 F.4th at 791-792 (internal quotation marks omitted).  The regulations provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  On the other hand, consistency compares an opinion with other evidence to determine its persuasiveness.  *See Woods*, 32 F.4th at 792.  With the "consistency" factor, the

---

[2] For applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg 5844-01 (Jan. 18, 2017).  Because Plaintiff filed her application on September 25, 2018 (Doc. 14-3 at 17), Plaintiff's claim is subject to the revised rules.

regulations explain: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The Ninth Circuit observed that an ALJ must explain how both the supportability and consistency factors were considered, and "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

### 1. Opinion of Dr. Pietruszka

Dr. Marvin Pietruszka, Plaintiff's primary treating physician, completed several reports related to Plaintiff between 2016 and 2020. He completed a "Permanent and Stationary Report" on August 23, 2016 (Exhs. 54F, 94F), and Supplemental Reports on November 1, 2018 (Exh. 8F) and October 16, 2029 (Exh. 57F). (Doc. 14-8 at 225-230; Doc. 14-9 at 365-377; Doc. 14-12 at 2-14.) In addition, Dr. Pietruszka completed a "Physical RFC Medical Source Statement" on February 14, 2019. (Exh. 9F, Doc. 14-8 at 246-249.) The ALJ summarized the medical opinions of Dr. Pietruszka stating:

> Marvin Pietruszka, M.D., opined that the claimant could occasionally lift up to twenty pounds; must lie down for one to two hours at a time for up to three hours in an eight-hour day; sit for two to three hours; requires unscheduled breaks; would be absent for five days or more per month; and would be unable to complete an eight-hour workday five or more days per month (9F). Marvin Pietruszka, M.D., opined that the claimant was precluded from working in an environment in which she would be re-exposed to mold (94F/10). Dr. Pietruszka also noted that the claimant was disabled (8F/33).

(Doc. 14-3 at 26-27.) The ALJ opined:

> These opinions are not found to be fully persuasive. While the record contains voluminous treatment notes, the extent of the limitations is not fully consistent with the overall evidence and reported activities. The claimant's symptoms showed improvement with treatment of her CIRS (65F/13). Her attention span was within normal limits (4F/6, 23F/60). The claimant's working memory, recall memory, and executive functioning were within normal limits (23F/60). She was able to perform digit-span testing forwards and backwards (64F/38, 68F/27). Her thought process was linear (4F/6). The claimant was able to recall three items immediately and two of three after a delay (4F/6). She was cooperative on exam (4F/6). Additionally, the claimant denied having any suicidal ideation (4F/6). As far as physical functioning, there was no evidence of any gait abnormality (7F/5, 33F/3, 75F/3, 10, 82F/3, 8). No swelling was noted in the claimant's

> extremities (75F/3, 10). She had normal lung exams as well (7F/4, 33F/2, 48F/15, 75F/10, 79F/4). Further, the claimant had normal cardiovascular exams (7F/4, 79F/1, 4). The claimant had normal musculoskeletal strength (7F/5, 48F/17). Her sensation was intact (7F/5, 48F/17). Extremity range of motion testing was within normal limits (7F/5). Straight leg raise testing was negative (7F/4). Finger-to-nose testing was performed without difficulty (48F/17). Regarding activities, the claimant reported being able to pay bills and count change (4E/5). She also reported being able to shop for groceries (4E/5). Further, she indicated that she was doing yoga and trying to walk (68F/7). As such, the overall evidence, including reported activities, is not consistent with the full extent of the opined limitations.

(Doc. 14-3 at 26-27.)

As the ALJ acknowledges, "the record contains voluminous treatment notes," including more than 300 pages of documents from Dr. Pietruszka in Exhibits 8F, 54F, 56F, 57F, and 93F. A review of the exhibits reveals the "treatment notes" from Dr. Pietruszka include progress reports; diagnostic testing; physical examination results; and objective testing, including CT scans and x-ray findings. (*See generally* Doc. 14-8 at 198-245; Doc. 14-9 at 365-536, 565-582, 584-590; Doc. 14-11 at 172-306.)

As to supportability, the ALJ should consider the extent to which a medical source supports his own opinion and explains the objective medical evidence. C.F.R. § 404.1520c(c)(1) ("Supportability examines the relevant objective medical evidence and supporting explanations *presented by the source*" [emphasis added]); *see also Cuevas v. Comm'r of Soc. Sec.,* 2021 WL 363682 at *10 (S.D.N.Y. Jan. 29, 2021) (the supportability inquiry is "geared toward assessing how well a medical source supported and explained" his or her opinion). Importantly, the ALJ did not make any findings as to what extent—if any—Dr. Pietruszka supported the limitations identified in the "Physical RFC Medical Source Statement" or his other reports. (*See id.* at 26-27.) The ALJ also failed to explain to what extent Dr. Pietruszka's own treatment records did not support his opinions. Indeed, the ALJ did not address *any* treatment notes from Dr. Pietruszka — including records in Exhibits 54F, 56F, at 93F—in the entirety of the decision. (*See* Doc. 14-3 at 17-32.) The broad reference to "voluminous treatment notes" was insufficient. Consequently, the ALJ failed to properly address the supportability factor under the regulations. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Lisa Ann M. v. Kijakazi*, 2024 WL 39193, at *5 (C.D. Cal. Jan. 3, 2024) (finding a supportability analysis insufficient where "the ALJ did not explain why she found [the

medical] opinions not supported, nor did she cite any findings in [the] treatment notes that demonstrate a lack of support").

### 2. Opinion of Dr. Jim

Dr. Lysander Jim, also a treating physician, completed several physical and mental RFC medical source statements in 2019 and 2020. (Doc. 14-8 at 686-689; Doc. 14-9 at 717-723.) The ALJ summarized the opinions in the RFC statements as follows:

> Lysander Jim, M.D., opined that the claimant could occasionally lift up to twenty pounds; must lie down for one to two hours at a time for up to three hours in an eight-hour day; sit for two to three hours; requires unscheduled breaks; would be absent for five days or more per month; and would be unable to complete an eight-hour workday five or more days per month (64F/17-20, 51-54). Dr. Jim also opined that the claimant's impairments precluded the performance of remembering work-like procedures, completing a normal workday, making simple work-related decisions, and setting realistic goals for fifteen percent or more of the day (64F/47-50).

(Doc. 14-3 at 28.) The ALJ explained the persuasiveness of Dr. Jim's opinion as follows:

> This opinion is not found to be fully persuasive. While it is supported with treatment notes, the extent of the limitations is not fully consistent with the overall evidence and reported activities. The claimant's symptoms improved with treatment of her CIRS (65F/13). The record reveals her attention span was within normal limits (4F/6, 23F/60). The claimant's working memory, recall memory, and executive functioning were within normal limits (23F/60). She was able to perform digit-span testing forwards and backwards (64F/38, 68F/27). Her thought process was linear (4F/6). The claimant was able to recall three items immediately and two of three after a delay (4F/6). She was cooperative on exam (4F/6). Additionally, the claimant denied having any suicidal ideation (4F/6). As far as physical functioning, there was no evidence of any gait abnormality (7F/5, 33F/3, 75F/3, 10, 82F/3, 8). No swelling was noted in the claimant's extremities (75F/3, 10). She had normal lung exams as well (7F/4, 33F/2, 48F/15, 75F/10, 79F/4). Further, the claimant had normal cardiovascular exams (7F/4, 79F/1, 4). The claimant had normal musculoskeletal strength (7F/5, 48F/17). Her sensation was intact (7F/5, 48F/17). Extremity range of motion testing was within normal limits (7F/5). Straight leg raise testing was negative (7F/4). Finger-to-nose testing was performed without difficulty (48F/17). Regarding activities, the claimant reported being able to pay bills and count change (4E/5). She also reported being able to shop for groceries (4E/5). Further, she indicated that she was doing yoga and trying to walk (68F/7). As such, the overall evidence, including reported activities, is not entirely consistent with the full extent of the opined limitations.

(Doc. 14-3 at 28-29.) Plaintiff contends the ALJ erred with this analysis and "failed to support

10

her conclusion" with citations to relevant medical findings. (Doc. 17 at 22-23.)

Review of the ALJ's analysis again reveals deficiencies under the revised regulations. Although the ALJ found the opinion was "supported with treatment notes," this limited finding does not clarify the extent to which the ALJ found the treatment notes supported the mental and physical limitations identified by Dr. Jim. It is also unclear whether the ALJ refers to treatment notes from Dr. Jim or other physicians in the record. (*See* Doc. 14-3 at 28.) There are more than 100 pages of records from Dr. Jim, which include brain imaging reports and mental cognitive tests, not addressed by the ALJ. (*See, e.g.,* Doc. 14-9 at 683 [cognitive testing indicating Plaintiff had a delayed recall of 1/5 words] *id.* at 679 [delayed recall of 0/5 words]; *id.* at 685 [MRI results showing a nonspecific white matter lesion in Plaintiff's brain].)

The ALJ appears to conflate the supportability and consistency factors by mixing references to records from Dr. Jim (Exhibits 64F and 68F) with other evidence in the record. (*See* Doc. 14-3 at 28-29.) The Court is unable to cure such an error, because the ALJ is charged with the obligation to clearly address both factors. *See Woods*, 32 F.4th at 791; *see also E.S. v. Kijakazi*, 2022 WL 4292333, at *12 (N.D. Cal. Sept. 16, 2022) (finding the ALJ conflated the supportability and consistency factors under the new regulations, because the ALJ failed to articulate which evidence supported the findings regarding each factor). Toward that end, as Plaintiff argues, the Court is unable to determine the extent to which the unidentified treatment notes supported—or contradicted—the opinion of Dr. Jim that Plaintiff "must lie down for one to two hours at a time for up to three hours in an eight-hour day." (*See* Doc. 14-3 at 28-29.) Likewise, it is unclear what evidence in the record the ALJ believed was inconsistent with such a limitation. Consequently, the ALJ's decision to reject the limitation identified by Dr. Jim was not supported by substantial evidence in the record.

**C.     Residual functional capacity**

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC,

the ALJ weighs medical and other source opinions. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). The ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when defining a claimant's RFC. 20 C.F.R. § 404.1545(a)(2).

Plaintiff contends the ALJ erred in addressing the RFC, because she asserts medical evidence in the record supports greater limitations, including "the need to lay down, the need for frequent rests between activities, as well as the increased fatigue caused by prolonged standing and walking." (Doc. 17 at 20; *see also id.* at 18-20.) Because the ALJ erred in addressing the opinions of Plaintiff's treating physicians—which impacts the RFC determination—the Court declines to find substantial evidence supports the RFC. *See Garmany v. O'Malley*, 2024 WL 3105824, at *6 (E.D. Cal. June 24, 2024) (errors in addressing medical opinion evidence "calls into question whether the assessed RFC … [is] supported by substantial evidence").

### D.     Remand

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Plaintiff requests the matter be remanded for further proceedings. (Doc. 17 at 23.) The Commissioner agrees further administrative proceedings are the proper remedy if the Court found reversible legal error. (Doc. 19 at 15, n.6.)

A remand is appropriate for further consideration of the opinions of Drs. Pietruszka and Jim, including clarification by the ALJ regarding the supportability and consistency of the medical opinions. *See* 20 C.F.R. § 404.1520c(c)(1). This error affects the RFC determination and supports the need for further administrative proceedings. *See Garmany*, 2024 WL 3105824, at *6; *see also Lisa Ann M.*, 2024 WL 39193, at *5-6. Accordingly, Plaintiff's request for remand is granted.

///

## V.     Conclusion and Order

Pursuant to 28 U.S.C. § 636 (b)(1), this Court performed a *de novo* review of the case. Having carefully reviewed the matter, the Court finds the ALJ failed to apply the proper legal standards and declines to affirm the decision of the ALJ. Thus, the Court **ORDERS**:

1. The Court declines to adopt the Findings and Recommendations (Doc. 20).
2. Plaintiff's motion for summary judgment or remand (Doc. 17) is **GRANTED**.
3. Defendant's request to affirm the administrative decision (Doc. 19) is **DENIED**.
4. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.
5. The Clerk of Court is directed to enter judgment in favor of Plaintiff Danae Schmitzer and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **September 30, 2024**

                                                           UNITED STATES DISTRICT JUDGE